UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROLYN M. MACHONIS, O.T., PLLC, and on behalf of itself and all others similarly situated, <br><br>                Plaintiff, <br><br>     v. <br><br> UNIVERSAL SURVEY CENTER, INC., d/b/a OpinionSite, a Delaware corporation, <br><br>                Defendant. | No. 1:18-cv-10978-RWS <br><br> Hon. Robert R. Sweet |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT UNIVERSAL SURVEY CENTER, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

The fax at issue in this case is not an "advertisement," plain and simple. Companies hire Universal[1] to conduct healthcare research through brief online surveys. Universal conducts its research by inviting healthcare professionals to complete surveys in exchange for payment. And sometimes it sends invitations by a fax. Here's the thing. The faxes simply inform recipients about the surveys and the compensation the recipient would receive for completing the surveys. Otherwise Universal's faxes do not contain offers to sell anything. Universal's faxes do not promote the sale of anything. The recipient cannot buy anything from Universal. It's just not possible. Plaintiff has accepted and does not dispute this.

Plaintiff instead offers two arguments for why Universal's fax should be deemed an "advertisement": (i) "because they propose a commercial transaction between recipients and [Universal]" whereby Universal offers to pay recipients to complete a survey with Universal aiming to profit thereby, and (ii) because they promote Universal's service and offer it to the fax

---

[1] To avoid confusion, it should be noted that Plaintiff named the above-captioned Defendant ("Universal") to the complaint as "Universal Survey Center, Inc., d/b/a OpinionSite" and Plaintiff refers to Universal as "OpinionSite" throughout its response [D.E. 20] (the "Response") to Universal's Motion to Dismiss Pursuant to Rule 12(b)(6), or, in the Alternative, to Stay Proceedings [D.E. 17] (the "Motion").

recipients for free. *See* Response, pp. 1-2, fn3. Both arguments are unworkable. The text of Universal's fax merely invites the recipient to complete a survey and get paid for doing so. Case law has established that a fax which simply requests information from a recipient is not an advertisement under the TCPA whether or not a fee is offered in exchange for the information. Moreover, Universal's invitation for fax recipients to complete a survey was not sent with an aim for profit. As alleged in the complaint, Universal profits by being hired and paid to conduct surveys. There is no plausible allegation that Universal's survey conducting services are offered or sold to the fax recipients completing the surveys.

Plaintiff's second argument is contrary to applicable law and the facts alleged. On its face, Universal's fax does not promote its service and does not offer its service to the fax recipients (not for sale or for free). Aside from the offer to pay the recipient for completing the survey, the fax contains only a single-sentence generic description informing the recipient of who is conducting the survey and for what purpose. That purely informational portion of the fax cannot be interpreted to promote or detail the commercial availability or quality of the survey conducting service Universal provides.

Universal's Motion, alternatively, requests that the Court stay this action pending the FCC's decision on the M3 USA Petition, in which the FCC is close to deciding dispositive issues in this case. Plaintiff asks the Court to deny the stay and offers nothing more than a baseless guess that the FCC will somehow never rule on the M3 USA Petition and even when it does it the ruling will "likely" not be outcome determinative in this case.

The arguments in Plaintiff's Response are without merit. Accordingly, Universal respectfully requests that the Court dismiss Plaintiff's TCPA claim with prejudice, or in the alternative, stay the case pending the resolution of M3 USA's FCC Petition.

I.    **A FAX THAT SIMPLY REQUESTS INFORMATION FROM A RECIPIENT IS NOT AN ADVERTISEMENT UNDER THE TCPA WHETHER OR NOT A FEE IS OFFERED IN EXCHANGE FOR THE INFORMATION**

Plaintiff first argues that Universal's faxes are ads because they propose a commercial transaction between recipients and Universal in that Universal offers to pay recipients to complete a survey with Universal aiming to profit thereby.  However, on its face, Universal's fax merely invites the recipient to complete a 30 minute survey for a vaccine research study and offers to pay the recipient $100 to compensate for the recipient's time. In essence the fax is asking the recipient for information.  Case law has established that an unsolicited fax that simply asks the recipient for information is not an advertisement under the TCPA whether or not compensation is offered to the recipient for the information.  *See e.g., Robert W. Mauthe, M.D., P.C. v. Nat'l Imaging Assocs., Inc.,* 2018 WL 1960945, at \*2–3 (E.D. Pa. Apr. 25, 2018), *appeal docketed*, No. 18-2119 (3d Cir. May 25, 2018) ("faxes which provide, verify, or collect information are not advertisements under the TCPA, because they do not promote the sale of property, goods, or services") (*citing Fulton v. Enclarity,* 2017 WL 783499 (E.D. Mich. 2017)); *see also Phillips Randolph Enters., LLC v. Adler-Weiner Research Chi., Inc.,* 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007) (holding a fax that invited recipients to "participat[e] in [a] research study" was not an advertisement despite offering a $200 honorarium).  Here the fax wants survey answers, that's all.  The recipient cannot buy anything from Universal.  The recipient is not offered a product or service, or told about a product or service that Universal is selling.  Universal has nothing to sell the recipient.  That's a key characteristic of Universal's fax that Plaintiff has simply failed to grasp.

Plaintiff tries to argue around this by saying the faxes somehow "promote [Universal's] purchase of fax recipients' survey taking services, which are critical to [Universal's] business of selling survey results."  *See* Response, p. 5.  This doesn't make sense.  The work that Universal

3

does for its clients is not offered or promoted in the fax that Plaintiff received.  For an "advertisement" to exist, the sender has to promote or offer something for sale *to the fax recipient*.  The statute doesn't contemplate liability for sending a fax that asks for information, even where the sender may use that information as part of its business to make money later on down the road, after the fax is sent.  *See e.g., Robert Mauthe, M.D., P.C. v. Optum, Inc.,* Civ. No. 17-1643, 2018 WL 3609012, at *6-7 (E.D. Pa. July 27, 2018) (holding a fax "to gather and verify information" from recipients for sender's healthcare provider database was "neither an advertisement on its face nor a pretext for an overall marketing scheme" even though the sender would use that information to improve the quality of its database and the services it sells).  The statute's plain language supports this. The TCPA defines an "unsolicited advertisement" as "any material advertising **the commercial availability or quality of any property, goods, or services** which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* at § 227(a)(5); *see also* 47 C.F.R. § 64.1200(f)(15). Under this definition, for material to be an "advertisement" that material must describe something that's commercially available.  A fax that seeks information in exchange for money just won't do.  Universal's faxes do not satisfy the plain statutory definition.

Plaintiff cites the *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.,* 788 F.3d 218, 224 (6th Cir. 2015) case in its response brief, but that case doesn't help Plaintiff.  First of all the court in *Sandusky* ultimately concluded that the faxes were not "advertisements" because they "did not solicit business for a commercially available product or service." *Id.* at 224.  Plaintiff appears to ignore *Sandusky's* holding altogether: "The term 'advertisement' unambiguously contains commercial components: To be an ad, the fax must *promote* goods or services *that are for sale*, and the sender must have profit as an aim. *Sandusky*, 788 F.3d at 223-24 (emphasis added). The *Sandusky* court further stated that "[a]n advertisement is any material that *promotes*

4

*the sale* (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." *Id.* at 222 (emphasis added). This makes sense, and is far more logical than Plaintiff's unsupported and expansive "bought or sold" definition. Another district court put it this way: "[A] person of ordinary intelligence knows that an 'advertisement,' as used in the TCPA, is an announcement of something ***offered for sale*** and that 'advertising' is the act of ***announcing something for sale***." *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673, at *5 (N.D. Ill. Feb. 1, 2010) (emphasis added).

Here, the fax plainly shows that Universal's services were not for sale to Plaintiff. Universal's fax did not solicit business from Plaintiff, and Universal's fax did not promote any sort of commercially available product or service. Yes, it's true that Universal may ultimately make a profit from its customers that hire Universal to conduct research. But the fax recipient can't hire Universal, and whatever profit Universal may receive, eventually, from someone else, has nothing to do with the fax that Universal sent to Plaintiff. *Mauthe v. Optum, Inc.,* Civ. No. 17-1643, 2018 WL 3609012, *4, 7 (E.D. Pa. July 27, 2018) (holding plaintiff's argument that faxes that further the defendant's transaction with third parties violate the TCPA "simply has no support in the law."). Even the complaint alleges that Universal profits from being hired and paid by "companies" and "organizations" to "conduct[] consumer and professional surveys." *See* Complaint ¶ 12. Plaintiff essentially admits that Universal does not offer or provide its services to fax recipients. Thus, any benefit to Universal's business that may come from fax recipients completing surveys is ancillary or remote and does not convert the fax survey invitation into an advertisement under the TCPA. *See Sandusky Wellness Ctr., LLC*, 788 F.3d at 225 ("the fact that the sender might gain an ancillary, remote and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation."); *Orrington v. Scion Dental, Inc.*, 2017 WL 2880900, at *4 (N.D. Ill. July 6, 2017) (same);

5

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.,* No. CIV. 12-2132, 2013 WL 486207, at *5 (D.N.J. Feb. 6, 2013) ("the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits.").

Because no other case law will support Plaintiff's argument, Plaintiff relies heavily on the *Lyngaas* decision from the Eastern District of Michigan. In that case, the district court went beyond the TCPA's express definition of "advertisement" and turned to the dictionary, ultimately finding that a fax offering to buy information from a fax recipient is an "advertisement." *See* Response at 5-6; *Lyngaas v. J. Reckner Assocs.*, No. 2:17-CV-12867-TGB, 2018 U.S. Dist. LEXIS 127345, at *6-7 (E.D. Mich. July 31, 2018). The *Lyngaas* decision is an outlier. It is also not controlling, and it certainly runs contrary to the plain meaning of the TCPA. By substituting the dictionary definition of "advertising" for the TCPA's clear definition of "unsolicited advertisement," *Lyngaas* ignored an essential component of the TCPA's definition (that the fax must specifically advertise "the commercial availability or quality of property, goods or services…") and also disregarded the key holding in *Sandusky* ("the fax must promote goods or services that are for sale"). At the end of the day, the *Lyngaas* decision is not the norm, as there are several competing, more reliable decisions that have come out the other way. *See, e.g., Lutz Appellate Servs. v. Curry*, 859 F. Supp. 180, 182 (E.D. Pa. 1994) (holding that faxes advertising employment opportunities, rather than advertising defendants' property, goods, or services, are not "advertisements."); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007) (granting motion to dismiss a TCPA lawsuit based on a fax which invited businesses to participate in a research discussion and offered them to $200 to participate). This Court should follow cases like *Lutz*, *Sandusky* and *Phillips,* not *Lyngaas*.

II.    **THE INFORMATIONAL PORTION OF UNIVERSAL'S FAX DOES NOT PROMOTE OR OFFER ANY SERVICE AND CANNOT BECOME AN ADVERTISEMENT UNDER THE TCPA SIMPLY BECAUSE IT MAY FURTHER UNIVERSAL'S BUSINESS OR COMMERCIAL INTERESTS**

Plaintiff next argues that Universal's faxes are advertisements because they further its business by "promoting its service designed to connect fax recipients with other consumers interested in fax recipients' services" and they are offering that service to the fax recipients for free. *See* Response, p. 10. This argument falls flat for several reasons. On its face, the fax (i) invites recipients to complete a survey in exchange for $100, (ii) invites recipients to receive alerts to complete other surveys in the future, (iii) allows recipients see Universal's reviews on Google, which show how other recipients who completed its surveys have been satisfied that they received compensation and that the survey took no longer than expected, and (iv) provides recipients with an informational description of what Universal does and why the survey is being conducting. *See* Complaint, Exh. A. None of this information promotes the commercial availability or quality of Universal's services.

As alleged in the complaint, Universal is hired by "companies" and "organizations" to conduct surveys. *See* Complaint ¶ 12. The fact that a single sentence in Universal's fax generically describes Universal's service does not somehow transform the fax into an advertisement. There's still no way for the fax recipient to purchase anything from Universal. Similar to the faxes in the *Sandusky* case, Universal's fax contains no pricing, ordering, or other sales information and did not ask the recipient to consider purchasing Universal's services. Also similar to the faxes in *Sandusky*, Universal's fax contains no discussion of the quality of Universal's service or even a clear or detailed description of its service. *Sandusky*, 788 F.3d at 221-24.

The decision in *Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F. Supp. 2d 272, 283 (S.D.N.Y. 2013), which Plaintiff cites in support, involves a totally different situation where "the

faxes contain no information about anything other than Defendants' service." Here, the fax does just the opposite. Universal's fax contains a single sentence generically stating what Universal does and the purpose of the survey, but otherwise the fax is comprised of other information for the recipient. This never violates the TCPA. Indeed, "merely declaring the availability of a good or service is insufficient" for a fax to be a promotion or advertisement. *Mauthe v. Optum, Inc.*, Civ. No. 17-1643, 2018 WL 3609012, at *5-6 (E.D. Pa. July 27, 2018) ("Unless [the faxes] promote the sale of an item by drawing public attention to it, faxes sent in furtherance of indirect commercial solicitations or transactions with third parties are not unsolicited advertisements.") (citing 47 U.S.C. § 227(a)(5)).

### III.   A STAY OF THIS CASE IS ABSOLUTELY JUSTIFIED, AS OTHER COURTS HAVE FOUND

Universal's Motion, alternatively, requests that the Court exercise its discretion to stay this action pending the FCC's decision on the M3 USA Petition, in which the FCC is deciding the same issue the Court faces here. Courts routinely stay TCPA cases pending the FCC's resolution of key issues, citing in support the primary jurisdiction doctrine, judicial economy and uniformity. *See*, *e.g.*, Order on Motion to Stay, *Thomas v. Smith-Palluck Assocs. Corp.*, Case No. 17-cv-02000, ECF No. 42 (D. Nev. Sept. 6, 2018) (staying TCPA case pending FCC ruling). The court in *Gensel v. Performant Techs., Inc.,* 2015 WL 402840, at *3 (E.D. Wis. Jan. 28, 2015) used the following rationale:

> [A] stay of these proceedings under the primary jurisdiction doctrine will promote uniformity in the administration of the TCPA. Instead of furthering a split of authority regarding the issues presented by Gensel's complaint, it is more efficient to simply wait for the FCC to do what it has already been asked to do.

Plaintiff of course objects to a stay, relying on its guess that the FCC will somehow never rule on the M3 USA Petition.[2]  There's no support for Plaintiff's argument, which basically assumes that our legislators at the FCC have stopped working.  Plaintiff also argues that the FCC's ruling is "unlikely to be dispositive in this case because, unlike M3 USA's faxes, [Universal's] faxes also promote a free service to fax recipients that is otherwise commercially available to and paid for by other companies." *See* Response, p. 12.  This doesn't make sense. As discussed above, Universal's fax, on its face, does not promote or advertise its survey conducting service at all and certainly does not promote or offer it to the fax recipients (not for sale or for free).  As it turns out, the fax involved in this case is strikingly similar to the fax in the M3 USA Petition.  Like Universal, M3 conducts market research surveys in the healthcare sector by sending "purely informational" faxes inviting healthcare professionals to complete the surveys.  Like Universal's fax, M3's fax simply invites the recipient to complete a survey in exchange for a fee and contains no sales information.  Of particular relevance to this case, M3 requested, among other things, that the FCC declare that "[i]nvitations to participate in market research surveys are not advertisements under the TCPA unless commercially-available property, goods or services are promoted in the fax itself or during the survey itself."  *See* M3 USA Petition at i–ii, p.5.

Plaintiff also argues there should be no stay because "the issues raised in this litigation are not issues of first impression or otherwise particularly complicated."  *See* Response, p. 13. This is overlooking a critical part of any stay.  The FCC has final rulemaking authority in this space.  Courts are required to follow the guidance from the FCC.  And if the FCC is deciding whether these types of survey faxes constitute "advertising," it's worth waiting for that decision, which promotes judicial economy and allows the parties to save the time and costs associated

---

[2] "[T]there is no basis (other than [Universal'] argument) to conclude that the FCC is imminently or ever ruling on M3 USA's petition." *See* Response, p. 2.

with class action litigation. The discovery burdens in TCPA suits fall almost entirely on the defendants. For plaintiffs, the burdens are minimal. Whether the issues are not particularly complicated, as Plaintiff says, doesn't change the fact that Plaintiff will suffer no prejudice whatsoever as the parties wait for the FCC's guidance. To the extent the case is not dismissed, it certainly should be stayed.

## CONCLUSION

For all of the foregoing reasons, Defendant Universal Survey Center, Inc., respectfully requests that this Court dismiss Plaintiff's complaint with prejudice. Should the Court not choose to dismiss the complaint, Universal requests that the Court stay these proceedings pending the FCC's resolution of M3 USA's pending Petition for Expedited Declaratory Ruling.

Dated:  February 25, 2019

Respectfully Submitted,

*/s/ John D. Giampolo*
John D. Giampolo
ICE MILLER LLP
1500 Broadway, 29th Floor
New York, New York 10036
Tel: (212) 824-4950
john.giampolo@icemiller.com

Isaac J. Colunga (*admitted pro hac vice*)
Heather L. Maly
ICE MILLER LLP
200 West Madison, Suite 3500
Chicago, Illinois 60606
Telephone:  (312) 726-1567
Fax:  (312) 726-2530
isaac.colunga@icemiller.com
heather.maly@icemiller.com

*Counsel for Universal Survey Center, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on February 25, 2019, he caused the foregoing to be filed with the Clerk of the United States District Court for the Southern District of New York, a copy of which will be served on all counsel of record by the Court's CM/ECF system.


_/s/    John D. Giampolo_

11