UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————————

CAROLYN M. MACHONIS, O.T., PLLC, and
on behalf of itself and all others similarly situated,

                                    Plaintiff,

        -against-

UNIVERSAL SURVEY CENTER, Inc. d/b/a
OpinionSite, a Delaware corporation,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

18cv10978 (AJN) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:**

        Carolyn M. Machonis, O.T., PLLC ("Plaintiff") brings this putative class action against

defendant Universal Survey Center, Inc., d/b/a Opinionsite ("Defendant") for violations of the

Telephone Consumer Protection Act of 1991 (the "TCPA"), as amended by the Junk Fax

Protection Act of 2005 (the "JFPA"), 47 U.S.C. § 227.  Currently before this Court for a report

and recommendation is Defendant's motion to dismiss the Complaint under Rule 12(b)(6) of the

Federal Rules of Civil Procedure for failure to state a claim.  (Dkt. 16.)  In the alternative,

Defendant's motion seeks to stay these proceedings pending the outcome of a third party's

petition that is currently pending before the Federal Communications Commission ("FCC"), as,

according to Defendant, an administrative ruling on that petition would likely add clarity to – if

not effectively determine – the appropriate resolution of Plaintiff's claim in this case.  (*See id*.)

For the reasons set forth below, I respectfully recommend that Defendant's motion to dismiss be

granted, and that its alternative motion for a stay be denied.

## BACKGROUND

### A.     Factual Background

The following facts are taken from the Complaint (Class Action Complaint and Demand for Jury Trial, dated Nov. 21, 2018 ("Compl.") (Dkt. 1)), and the exhibit attached thereto (the "Fax") (Dkt. 1-1), and are assumed to be true for purposes of this motion:

Defendant is a for-profit "data collection company," which "offers marketing, survey programming, and other research services to customers throughout the United States."  (Compl. ¶¶ 1, 12.)  Among other things, Defendant conducts surveys and sells the data acquired through these surveys to other organizations seeking that data.  (*Id.* ¶¶ 12-13.)

On September 26, 2018, Defendant sent Plaintiff an unsolicited facsimile transmission (the Fax cited above), seeking participants for a survey.  (*Id.* ¶ 19; *see also* Fax.)  Defendant had no previous existing business relationship with Plaintiff, nor did Plaintiff consent to receiving faxes from Defendant.  (Compl. ¶ 20.)

The Fax was directed to the attention of "Office Managers" and read, in relevant part:

> [Defendant] connects healthcare professionals, like yourself, to organizations interested in gathering insights on important medical issues critical to improving the future healthcare landscape.  We have a new research opportunity that we think may be of interest to you!

(Fax.)  The Fax then included a website link and login information for recipients to participate in a 30-minute online survey entitled "Vaccines Study."  (*Id.*)  The Fax further stated:  "You will be compensated $100 for your time," and it invited recipients to "[s]hare [their] [o]pinion[s]," "[g]et [r]ewarded," and "[s]ign up for FREE to be alerted to future PAID surveys."  (*Id.* (emphasis in original).)  The Fax also noted that the invitation to participate in the survey was "time sensitive," so it urged recipients to "please log in at [their] earliest convenience," and to email Defendant's help desk with questions.  (*Id.*)  Finally, the Fax concluded:

> We look forward to hearing your opinions!  In the meantime, we encourage you to view what others have said about their experiences working with our panel by visiting **www.opinionsite.com/googlereviews**

(*Id.* (emphasis in original).)

### B.    Procedural History

On November 21, 2018, Plaintiff, on its own behalf and putatively on behalf of a class of all others similarly situated, filed the Complaint, claiming that the Fax was an unsolicited advertisement without an appropriate opt-out notice, and that Defendant's transmission of the Fax to non-consenting parties therefore violated the TCPA.  (Compl.)  On January 14, 2019, Defendant timely filed its motion to dismiss pursuant to Rule 12(b)(6), or, in the alternative, to stay the action.  (Dkt. 16.)  In support of its motion, Defendant submitted a legal memorandum, in which it argued (1) that the Fax was merely a survey and thus not an "advertisement," as that term has been defined by the FCC and related case law (*see* Memorandum in Support of Defendant Universal Survey Center, Inc.'s Motion To Dismiss Pursuant to Rule 12(b)(6), or, in the Alternative, To Stay Proceedings, dated Jan. 14, 2019 ("Def. Mem.") (Dkt. 17), at 3-8); and (2) that, if the Court should decide not to dismiss the Complaint, then a stay would be warranted under the "primary jurisdiction doctrine" (*id.*, at 11), because an entity named M3 USA Corporation ("M3 USA") had filed a petition with the FCC, "seeking guidance on the exact issue this case involves" (*id.*, at 2), and, once issued, "[t]he declaratory ruling from the FCC [would] resolve the key issue in this case and may dispose of the case altogether" (*id.,* at 9).[1]

---

[1] Based on information made publicly available by the FCC, it appears that the M3 USA petition was filed with the FCC in March of 2017.  *See* FCC, Electronic Comment Filing System, https://www.fcc.gov/ecfs/search/filings?authors_name=Paul%20Werner&filers_name=M3%20USA%20Corporation&sort=date_disseminated,DESC.

3

On February 11, 2019, Plaintiff opposed Defendant's motion.  (*See* Plaintiff's Response to Defendant's Motion To Dismiss or To Stay, dated Feb. 11, 2019 ("Pl. Mem.") (Dkt. 20).)  In its opposition, Plaintiff argued that the Fax constituted an advertisement covered by the TCPA because it "solicit[ed] recipients to *sell* their survey[-]taking *services* to [Defendant], which [Defendant] in turn *aim*[*ed*] to profit from as part of its business of selling survey results to healthcare companies" (*id.,* at 1 (emphasis in original)), and because the Fax "also solicit[ed] recipients to 'Sign up for FREE' to become [Defendant] panel members going forward" (*id.*; *see also id.,* at 4-10).  Of note, Plaintiff argued that its Complaint did not claim that the Fax was a "pretext" for an advertisement, but rather that the Fax itself *was* an advertisement.  (*Id.,* at 7 n.3.) Plaintiff also opposed Defendant's request for a stay, arguing, *inter alia,* that the FCC's ruling, if and when it should issue, would not necessarily be outcome determinative.  (*Id.,* at 1-2; 11-16.)

On February 25, 2019, Defendant submitted a reply memorandum, in which it argued that the Fax was not an advertisement because it was not sent with an "aim for profit," had only an ancillary benefit to Defendant's business, and did not promote any service or product that was commercially available to Plaintiff.  (Reply Memorandum in Further Support of Defendant Universal Survey Center, Inc's Motion To Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, To Stay Proceedings, dated Feb. 25, 2019 ("Def. Reply Mem.") (Dkt. 21).) Defendant also reiterated its initial argument that, in the alternative to dismissal, a stay would be warranted, asserting that the fax transmission at issue in the M3 USA petition that is currently before the FCC is sufficiently similar to the Fax that is the subject of the instant case that a ruling by the FCC would effectively be dispositive.  (*Id.*, at 8-10.)

## DISCUSSION

## I.      APPLICABLE LEGAL STANDARDS

### A.      Rule 12(b)(6)

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. (12)(b)(6).  In deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  The issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

Thus, the court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 666), *cert. denied*, 131 S. Ct. 901 (2011).

Although the Court is normally constrained to considering only the contents of the pleadings in deciding a motion under Rule 12(b)(6), *see* Fed. R. Civ. P. 12(b)(d), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013).

### B.   "Unsolicited Advertisements" Under the TCPA

The TCPA prohibits the use of a fax machine to transmit an "unsolicited advertisement" to any recipient within the United States, except in certain specified circumstances, as where the fax contains an opt-out notice that accords with statutory requirements.  47 U.S.C. § 227(b)(1)(C).  For purposes of the TCPA, an "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(5).  The statute creates a private right of action in favor of a party that receives an unsolicited advertisement by fax, and it provides for both statutory damages and injunctive relief. 47 U.S.C. § 227(b)(3).

With respect to surveys, although the TCPA itself does not expressly exclude an invitation to participate in a survey from the definition of an "unsolicited advertisement," the legislative history of the TCPA suggests that Congress did not intend to prohibit such invitations. In passing the TCPA (prior to the JFPA amendments that brought faxes within the ambit of the

6

statute), the Committee on Energy and Commerce, in recommending that the TCPA be enacted,

noted the following:

> To come within the definition, a caller must encourage a
> commercial transaction.  Thus, the Committee does not intend the
> term 'telephone solicitation' to include public opinion polling,
> consumer or market surveys, or other survey research conducted
> by telephone.  A call encouraging a purchase, rental or investment
> would fall within the definition, however, even though the caller
> purports to taking a poll or conducting a survey.
>
> Survey research conducted by telephone is not covered by the
> legislation for a number of reasons.  First, such research has
> generated relatively few complaints from subscribers.  Equally
> important, the results of telephone surveys could be rendered
> unreliable if the pool of subscribers available to be called was to be
> artificially limited by 'Don't Call' lists or by other means.
> Alternative means of conducting surveys are significantly more
> expensive, and less practical, than telephone surveys.

H.R. Rep. No. 102-317, at *13 (1991).

Further guidance regarding the extent to which surveys may be considered

"advertisements" within the meaning of the statute has been provided by the FCC, the agency

charged with implementing the TCPA, as amended by the JFPA.  *See Simon v. Ultimate Fitness*

*Grp., LLC*, No. 19cv890 (CM), 2019 WL 4382204, at *5 (S.D.N.Y. Aug. 19, 2019) ("The FCC

has the authority to promulgate regulations implementing the TCPA." (quoting *King v. Time*

*Warner Cable Inc.*, 894 F.3d 473, 474 (2d Cir. 2018)); *Bais Yaakov v. Alloy*, 936 F. Supp. 2d

at 282 (noting that, "in resolving the matter of whether [] faxes at issue constitute advertising[,] it

is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the

FCC" (internal quotation marks, alterations and citation omitted)).  In connection with its

implementation of the JFPA amendments, the FCC noted that "surveys *that serve as a pretext to*

*an advertisement* are subject to the TCPA's facsimile advertising rules," *Rules and Regulations*

*Implementing the TCPA,* 71 Fed. Reg. 25967, 25973 (May 3, 2006) (the "2006 Rule") (emphasis

added), suggesting that unsolicited faxed surveys (like telephone surveys) that do not encourage a purchase or other financial transaction, are not prohibited *per se*, although they would be unlawful if a pretext for advertising; *see also In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd. 14014, 14040 (2003) (stating that surveys are not "telephone solicitations" and not prohibited to individuals on the national Do-Not-Call list).

Further, with respect to offers of *free* products and services, although the FCC's 2006 Rule states that "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition," 2006 Rule, at 25973, the Rule goes on to explain that this is based on the following rationale:

> In many instances, 'free' seminars serve as a *pretext* to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the fascimile recipient, the products promoted within the publication are often commercially available.

*Id.* (emphasis added). As discussed below, after considering this language, the Second Circuit has concluded that the offer of a free product or service is *not* an "advertisement" *per se*; rather, according to the court, where a plaintiff seeks to raise a TCPA challenge to an unsolicited fax that purported to offer a free product or service, the plaintiff must at least plead some minimal allegations that the free offer was a pretext to advertise commercial goods or services to the recipient. *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 847 F.3d 92 (2d Cir. 2017); *see also id.* at 98-99 (Leval, J., concurring) (noting that the majority opinion rejected an interpretation of the 2006 Rule that would find that faxes promoting free products or services were advertisements *per se* under the TCPA).

It appears, however, that neither the Second Circuit nor any district courts within the Circuit have specifically addressed whether or when an unsolicited faxed invitation to participate in a paid survey can constitute an unsolicited "advertisement" under the TCPA, as amended by the JFPA and interpreted by the FCC.

## II.   DEFENDANT'S MOTION

### A.   Motion For Dismissal Under Rule 12(b)(6)

Turning first to Defendant's principal argument that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a viable claim under the TCPA, this Court notes, as a preliminary matter, that it may consider the contents of the Fax in connection with a Rule 12(b)(6) analysis, as the Fax was attached to and incorporated by reference in the Complaint, and as there is no dispute between the parties as to its authenticity.  (*See generally* Def. Mem.; Pl. Mem.; *see also Bais Yaakov v. Alloy*, 936 F. Supp. 2d at 278 (considering fax attached to complaint in deciding motion to dismiss TCPA claim under Fed. R. Civ. P. 12(b)(6)).)  The Court also accepts as true Plaintiff's allegations that the receipt of the Fax was unsolicited, and that its transmission did not contain an opt-out notice or was otherwise protected by any express statutory exception to conduct prohibited by the TCPA.  (*See* Compl. ¶ 18.)  The only questions for the Court, therefore, are whether Plaintiff's pleaded allegations are sufficient to give rise to a plausible inference that (1) the Fax was, on its face, an "advertisement" within the meaning of the statute, or, if not, then (2) it was a pretext for advertising.  This Court finds that neither inference can plausibly be drawn from the contents of the Fax and the alleged circumstances of its delivery.

>   **1.      The Complaint Does Not Adequately Allege
>   That the Fax, on Its Face, Was an Advertisement.**

In its motion, Defendant contends that the Fax was not an advertisement because it was purely an invitation to participate in a survey.  (Def. Mem., at 3-6.)  Plaintiff essentially advances two arguments in opposition to this contention:  first, it argues that the invitation to participate in the "Vaccines Study" survey was an advertisement because, by offering to pay survey recipients, it effectively sought to buy their services and then, ultimately, to profit from those services (*see* Pl. Mem., at 1, 5-6); and, second, it argues that Defendant's invitation to sign up for free for notifications regarding future surveys was an advertisement for Defendant's "survey matching service" (*id.*, at 1, 7-10).  Neither of Plaintiff's arguments is persuasive.

>   **a.      An Invitation To Participate in a
>   Survey Is Not, *Per Se,* an Advertisement.**

Defendant asserts that the Complaint should be dismissed because the Fax merely invited participation in a survey, and, therefore, it cannot be considered to have been an "advertisement" under the TCPA.  (Def. Mem., at 3-6; Def. Reply Mem., at 3-6.)  Although this Court disagrees with Defendant's suggestion that the *only* purpose of the Fax was to invite the recipients' participation in the particular "Vaccines Study" survey it referenced (*see* Discussion, *infra*, at Section II(A)(1)(b)), it agrees that, to the extent the Fax did invite participation in a single survey, that language did not render the Fax a prohibited "advertisement."

Both the legislative history of the TCPA and the 2006 Rule appear to confirm that mere invitations to participate in a survey, without more to render them a pretext for advertising, should not themselves be viewed as prohibited advertisements under the TCPA.  *See* H.R. Rep. No. 102-317, at *13 (1991) ("[s]urvey research . . . is not covered by the legislation for a number of reasons"); 2006 Rule, at 25973 ("surveys *that serve as a pretext to an advertisement* are subject to the TCPA's facsimile advertising rules" (emphasis added)).  Further, although this

10

Court has located no judicial authority in this Circuit addressing the legality under the TCPA of

survey invitations, federal courts elsewhere have commonly followed the guidance offered by

the statute's legislative history and the FCC Rule, and, accordingly, have dismissed, at the

pleading stage, TCPA claims based solely on faxed invitations to participate in a survey.  *See,*

*e.g., Robert W. Mauthe, M.D., P.C. v. Nat'l Imaging Assocs., Inc.*, No. CV 17-1916, 2018 WL

1960945, at *2 (E.D. Pa. Apr. 25, 2018) (faxed survey that did not seek to "initiate a new

[commercial] transaction" was not an advertisement under the TCPA), *aff'd sub nom. Mauthe v.*

*Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246 (3d Cir. 2019); *Phillips Randolph Enterprises,*

*LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax that

invited recipients to participate in research study in exchange for $200 honorarium was not

advertisement); *cf. Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.,* No. 06-

0369-CV-W-ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006) (dismissing TCPA claim

at 12(b)(6) stage where fax announced clinical drug trial and sought participants), *aff'd,* 222 F.

App'x 530 (8th Cir. 2007).

      Despite this authority, Plaintiff attempts to avoid the conclusion that the Fax was

permissible by describing it in "advertising" language, claiming that the Fax "solicit[ed]

recipients to *sell* their survey[-]taking *services* to [Defendant], which [Defendant] in turn *aim*[*ed*]

to profit from" (Pl. Mem., at 1, 5-6 (emphasis in original)).  As for Plaintiff's characterization of

the Fax as a solicitation to "sell" survey-taking services, the same would apply to any invitation

to participate in a paid survey.  Yet nothing in either the legislative history of the TCPA, the

2006 Rule, or the case law cited above suggests that the statute should be read as drawing a

distinction between faxed invitations to participate in paid surveys and invitations to participate

in unpaid surveys.  Nor – given that a recipient would benefit financially from participating in a

paid survey, but would not similarly benefit from participating in an unpaid survey – would such a distinction comport with the purpose of the TCPA, which was to protect the recipients of unsolicited advertising.  As for Plaintiff's observation that Defendant would ultimately profit from the survey by being paid by a client for its results, this Court finds no support, in law or logic, for the proposition that invitations to participate in a survey would be lawful under the TCPA if the sender itself aimed to be the end-user of the survey, but unlawful if the sender had been hired by another organization for the purpose of conducting the survey and providing it with the results (as is often the case with surveys).[2]

Moreover, the single case that Plaintiff cites in support of its arguments, *Lyngaas v. J. Rockner Assoc., Inc.,* No. 2:17-cv-12867-TGB, 2018 WL 3634309, at *1 (E.D. Mich. Jul. 31, 2018), is not only inconsistent with all of the other relevant authority that this Court has located, but its reasoning is unpersuasive.  First, in holding that a faxed invitation to participate in a paid survey should be viewed as an advertisement under the TCPA, *id.*, at *3, the court failed to acknowledge either the legislative history or the FCC interpretations of the statute, *see generally id.*, which expressly or implicitly run counter to the court's conclusion.  Second, in reaching its conclusion, the court relied on particularly expansive, dictionary definitions of the word "advertising," *see id.*, at *2 (quoting, *e.g.*, Webster's Third New International Dictionary 31 (1986) for the proposition that "advertising" means "the action of calling something (as a

---

[2] This Court notes that, in a TCPA case, the Eastern District found it immaterial that the defendant (a cruise company) had, by fax, sought to solicit the purchase of its cruise services by non-party clients of the fax recipient (a travel agent), rather than by the recipient itself. *Gottlieb v. Carnival Corp.*, 595 F. Supp. 2d 212, 222-23 (E.D.N.Y. 2009), *reconsidered on other grounds,* 635 F. Supp. 2d 213 (2009).  In this case, though, neither the recipient of the Fax (a medical practice), nor its doctors, nor their patients, would have logically been potential customers for Defendant's commercial services – *i.e.*, survey-conducting services.  Plaintiff thus has no plausible claim that those who might be interested in paying Defendant to conduct a survey were being targeted, either directly or indirectly, by the Fax.

commodity for sale, a service offered or desired) to the attention of the public" (internal quotation marks omitted))), that have not been incorporated into the statute by Congress, nor adopted by the regulating agency.

Accordingly, based on the weight of the authority set out above, I recommend that the Court find that, as a matter of law, the Fax's invitation to recipients to participate in a paid survey did not *per se* render the Fax an "advertisement" under the TCPA.

**b.      An Invitation to Sign Up for Alerts Regarding
Future Surveys Is Also Not, *Per Se*, an Advertisement.**

Plaintiff also argues that the Fax constituted an advertisement because, by inviting recipients to sign up for future survey alerts, it was "offer[ing] a free matching service," which Defendant planned to "commercialize[]" and be "compensated for by medical organizations seeking information that can be gleaned from surveys."  (Pl. Mem., at 7.)  In other words, Plaintiff argues that, by promoting Defendant's survey "matching service," the Fax was seeking subscribers to its "commercial product," even though that product was not targeted for sale to Plaintiff.  (*Id.* at 7-8.)  Under applicable Second Circuit authority, this argument is also unavailing.

The defining characteristic of the language at issue here ("Sign up for FREE to be alerted to future PAID surveys" (Fax)) is that it is an offer to recipients to sign up, for free, for a future opportunity to be paid for survey participation.  As there is no principled reason why an invitation to participate in a *present* survey should be viewed as qualitatively different from an invitation to participate in a *future* survey, this Court's stated reasoning as to why the former is permissible should extend to the latter.  Moreover, even if the Fax were read as promoting future "services," the fact that it did not suggest that there would be any charge for such services provides a separate reason why the Fax should not, on its face, be considered an advertisement.

As noted above (*see* Discussion, *supra*, at Section I(B)), the Second Circuit has held that faxes

that promote free products or services – while they may serve as a *pretext* for an advertisement –

are not *per se* advertisements under the TCPA.  *Physicians Healthsource,* 847 F.3d at 95; *see*

*also id*. at 98-99 (Leval, J., concurring).

Thus, absent allegations giving rise to a plausible inference of a commercial pretext,

I recommend that the Court find that the Fax's language inviting recipients to "sign up for free"

to be notified of future surveys also did not constitute an advertisement, as a matter of law.

> **2.     The Complaint Does Not Adequately Allege**
> **That the Fax Served as a Pretext for Advertising.**

Defendant also argues, in its motion, that Plaintiff's TCPA claim may not plausibly be

read to plead that the Fax served as a "pretext" for advertising.  (*See* Def. Mem., at 6-7; *see also*

2006 Rule, at 25973.)  The Court need not even reach this issue, given that Plaintiff represents,

in its own briefing, that it is not seeking to advance any contention that the Fax was pretextual.

(Pl. Mem., at 7-8 n.3 ("Plaintiff is *not* alleging that . . . the survey itself is a pretext as

contemplated by the FCC order's discussion of surveys.  Plaintiff is alleging that [Defendant]'s

faxes are ads because they propose a commercial transaction between recipients and

[Defendant], and because they promote [Defendant]'s commercially available survey matching

service . . . ." (emphasis added)).)  In any event, Plaintiff would have no basis for claiming

pretext here, given the character of the Fax and applicable case law.

This Court does note that, in *Physicians Healthsource*, in which the Second Circuit

addressed the issue of when an unsolicited fax may be a pretext for unlawful advertising, the

Second Circuit reversed the dismissal of a TCPA complaint that had only minimally pleaded

pretext.  The unsolicited fax at issue had been sent by a defendant pharmaceutical company to

the plaintiff (a medical practice), inviting one of the plaintiff's doctors to a free "dinner meeting"

and discussion about certain medical conditions. *Physicians Healthsource*, 847 F.3d at 93. In connection with a motion to dismiss, the defendant submitted evidence – of which the district court took judicial notice – showing that, at the time, the defendant was still awaiting FDA approval for a drug intended to treat one of those conditions. *Id*. at 94. As the drug had not yet been approved, the defendant asserted that it would have been legally prohibited from promoting the drug at the dinner. *Id*. Based on this, the defendant argued that the fax, which, on its face, only offered a free dinner and discussion, could not be viewed as having had an ulterior commercial purpose. *Id*. The district court agreed, holding that "the hypothetical future economic benefit that the [defendant] might receive someday does not transform the [f]ax into an advertisement" and dismissing the plaintiff's complaint. *Id*.

       In reversing, the Second Circuit took issue not with the district court's interpretation of the law as requiring the plaintiff "to show that the fax ha[d] a commercial pretext – *i.e.*, 'that the defendant advertised, or planned to advertise, its products or services at the seminar,'" but rather with the extent of what the plaintiff needed to have alleged to survive a motion to dismiss under Rule 12(b)(6). *Id.* at 95. On this point, the Circuit held that, "at the pleading stage, where it is alleged that a firm sent an unsolicited fax promoting a free seminar discussing a subject that relates to the firm's products or services, there is a plausible conclusion that the fax had the commercial purpose of promoting those products or services." *Id*. In so holding, the court noted that, "[o]f course, . . . not every unsolicited fax promoting a free seminar satisfies the [2006] Rule," *id.* at 96, but it also reasoned that "[r]equiring plaintiffs to plead specific facts alleging that specific products or services would be, or were, promoted at the free seminar would impede the purposes of the TCPA." *Id.* The court left the door open for the defendant to demonstrate, on a discovery record, that its fax promoting a free seminar was not actually a pretext for a

15

product promotion.[3]  *Id.* at 97; *see also Lackawanna Chiropractic P.C. v. Tivity Health Support,*

*LLC,* No. 18-CV-649, 2019 WL 296753, at *3 (W.D.N.Y. Jan. 23, 2019), *as corrected* (Jan. 24,

2019) (finding that complaint stated a plausible claim for relief based on allegation that fax

invited healthcare providers to sign up, for a fee, for defendant's patient-matching service, but

noting that, through discovery, defendant could rebut the allegation that the fax was sent with a

commercial purpose); *cf. Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in*

*London, Inc.,* No. 13cv4564 (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014) (declining

to grant summary judgment on TCPA claim where fax promoted free information session, as,

based on evidentiary record, "a jury could reasonably conclude that Defendant advertises the

service it sells . . . at its informational sessions").

        In this case, unlike in *Physicians Healthsource*, the Complaint contains absolutely no

factual allegations, even conclusory ones, that the Fax was a pretext to promote to its recipients

the availability or quality of Defendant's survey-taking service, or any other commercial product

or service.  (*See generally* Compl.)  Nor does the Complaint contain any allegation suggesting

that, had Plaintiff signed up for Defendant's future alerts, it would have then received

advertisements for goods or services from Defendant or others, separate and apart from

Defendant's notifications of opportunities to participate in future surveys.  (*See id.; see also Bais*

*Yaakov v. Alloy*, 936 F. Supp. 2d at 283 (finding that plaintiff had plausibly pleaded that a fax

offering free programming was an advertisement because plaintiff had alleged, *inter alia*, that,

"given that two minutes of each day of [the free] content consists of sponsored advertisements,

---

        [3] After remand, the district court eventually granted summary judgment to the defendant,
finding, on the discovery record, that there was no genuine dispute that the defendantt did not, in
fact, advertise its products at the free seminar.  *Physicians Healthsource*, No. 3:14-CV-00405
(SRU), 2018 WL 1866030, at *5-8 (D. Conn. Apr. 18, 2018).

the offer of 'free' content is plainly a vehicle to . . . 'advertise . . .' and 'sell [the sponsor's] property, goods, or services'").)

For the reasons discussed above, the Fax – as an invitation to participate in a paid survey or, at most, an invitation for free services – should not, *per se*, be considered a prohibited "advertisement."  Further, as Plaintiff has not pleaded *any* allegation that the Fax was intended to serve as a pretext for Defendant's advertising of any commercial products or services (and, indeed, has conceded in its opposition papers that it is not relying on any such theory of liability), I recommend that the Complaint be dismissed under Rule 12(b)(6) for failure to state a viable claim under the TCPA.

## B.    Alternative Motion For a Stay of These Proceedings

Based on the above recommendation that the Complaint be dismissed, I also recommend that Defendant's alternative motion for a stay be denied as moot.  Should the Court disagree with this Court's reasoning regarding the adequacy of Plaintiff's pleading, however, and instead determine that the Complaint is sufficient to survive Defendant's dismissal motion, then I would respectfully recommend that Defendant's alternative motion for a stay be denied on its merits.

By the time the motion was referred to this Court for a report and recommendation, it had already been fully briefed for nine months, and, as far as this Court can discern from the Docket, no discovery has taken place for a year.  (*See* Dkt.)  Essentially, then, Defendant has already had the benefit of a *de facto* stay for that period of time.  Furthermore, Defendant's request for a stay is premised on the pendency of a petition currently before the FCC, and it appears that no action has been taken with respect to that petition for nearly three years.  (*See* FCC link cited *supra*, at n.1.)  The FCC is not bound to rule on a petition before it by any date certain, *see* 47 C.F.R. § 1.2, and it may choose not to issue a ruling at all, *see* 5 U.S.C. § 554(3) (committing the

issuance of a declaratory ruling to the agency's "sound discretion").  Defendant offers no support

for its assertion that the FCC "is on the verge" of issuing a ruling (Def. Mem., at 15), and, with

the benefit of hindsight, it is now plain that this assertion – made over a year ago – was unduly

speculative.

Under these circumstances, it appears that the requested stay, if granted, could

significantly prolong what has already been a notable delay in this action.  For this reason, the

better course – should the Complaint survive – would be for the Court to allow discovery to

proceed.  *See Simon,* 2019 WL 4382204, at *7 (denying request for stay of TCPA claim based

on a pending Petition before the FCC and noting, "[i]f and when the FCC rules, we will deal

with it").

## <u>CONCLUSION</u>

For all of the foregoing reasons, I respectfully recommend that Defendant's motion to

dismiss be granted, and that Defendant's alternative motion for a stay be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable Alison J. Nathan, United States

Courthouse, 40 Centre Street, Room 2102, New York, New York 10007, and to the chambers of

the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007.  Any requests for an extension of time for filing objections must be directed to

Judge Nathan.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated: New York, New York
       February 21, 2020

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Hon. Alison J. Nathan, U.S.D.J.

All counsel (via ECF)

19